348 F.Supp. 745 (1972)
UNITED STATES of America, Plaintiff,
v.
William Edward ECHOLS, a/k/a Steve Page, Defendant.
No. 72 Cr 46(4).
United States District Court, E. D. Missouri, E. D.
June 15, 1972.
Daniel Bartlett, Jr., U. S. Atty., Robert B. Schneider, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
James A. Bell, St. Louis, Mo., for defendant.
WANGELIN, District Judge.

MEMORANDUM
By grand jury indictment filed on February 16, 1972, the defendant, William Edward Echols, also known as Steve Page, was charged with offenses in three counts. Count 1 alleged violation of 18 U.S.C. §§ 922(e) and 924(a), interstate transportation of a firearm and ammunition. Count 2 alleged violation of 21 U.S.C. § 841(a)(1), possession of a quantity of cocaine with the intent to distribute. Count 3 alleged violation of 21 U.S.C. § 844(a), possession of a quantity of marihuana.
Pursuant to defendant's plea of not guilty to all three counts of the indictment and pursuant to the waiver by defendant of his right to trial by a jury, this action was tried on May 1, 1972, to the Court sitting without a jury.
During the course of the trial the transcript of the prior evidentiary hearing on defendant's motion to suppress was entered in evidence by stipulation between the Government and the defendant. Furthermore, during said trial defendant was present and represented by retained counsel, defendant's motion to suppress was renewed, testimony was adduced, and exhibits were entered in evidence. Defendant has filed proposed findings of fact and conclusions of law.
*746 The Court, being fully advised in the premises and pursuant to defendant's request for special findings of fact, makes the following findings of fact and conclusions of law.

GENERAL FINDINGS
The Court finds the defendant, William Edward Echols, guilty as charged in Counts 1, 2, and 3 of the aforementioned indictment.

SPECIAL FINDINGS
1. On February 2, 1972, at approximately 9:50 A.M. (PST) the defendant, William Edward Echols, using the name "Steve Page" purchased in Los Angeles, California, with cash, a one-way ticket for Trans World Airlines (TWA), Flight No. 136, which was scheduled to depart Los Angeles, California, at 9:55 A.M. (PST) and to arrive in St. Louis, Missouri, at 3:05 P.M. (CST).
2. The TWA agent who sold the ticket to defendant asked defendant for identification which defendant could not produce. The ticket agent advised TWA Public Relations Representative Kent Tayman and Deputy United States Marshal William Speiss of defendant's failure to produce identification.
3. Defendant was stopped by Tayman and Deputy Speiss and was asked by them for identification. Defendant stated that all of his identification was in his baggage which was being loaded on the aircraft.
4. Tayman denied defendant boarding privileges because defendant met the Federal Aviation Administration security profile and could not produce identification.
5. Defendant inquired about his baggage, a brown "Lark" travel bag, which defendant described as being checked under TWA baggage check No. 761905. Defendant had knowingly delivered this bag to TWA, to be loaded onto the aircraft for shipment to St. Louis, Missouri.
6. Tayman recorded the claim check number given him by defendant and informed defendant that this baggage would be held in the "Lost and Found" in St. Louis. The retrieval of defendant's baggage at this time would have been unreasonable as it would have caused the flight to be delayed in its departure.
7. At approximately 10:00 A.M. (PST) defendant cashed in his ticket for flight No. 136 and, sometime before 12:25 P.M. (PST), he purchased a ticket under the name of "Echols" for TWA Flight No. 194 which was scheduled to depart Los Angeles at 12:25 P.M. (PST) and to arrive in St. Louis at 5:41 P.M. (CST). Defendant produced identification for the purchase of this ticket.
8. Before the departure of TWA Flight No. 136, Tayman advised David M. Gentry, Director of Customer Service for TWA, that boarding privileges were to be denied a Negro passenger for Flight No. 136. Tayman gave Gentry the claim check number Tayman received from the defendant, so that the number would be given to the TWA baggage agent in St. Louis. It was intended that defendant's baggage be identified and returned to Los Angeles.
9. TWA Flight No. 136 arrived in St. Louis, Missouri, at approximately 3:05 P.M. (CST). The brown "Lark" travel bag with the claim check No. 761905 was shipped from Los Angeles, California, to St. Louis, Missouri, on TWA Flight No. 136 and was left unclaimed at the baggage counter.
10. Upon his arrival in St. Louis on this TWA Flight No. 136, Gentry advised Terry Vaughn, TWA Customer Service Agent, of the claim check number identifying defendant's bag. Gentry and Vaughn found the unclaimed luggage of defendant with claim check No. 761905 and Vaughn carried this bag into the TWA baggage agent's office. Vaughn had been informed that the bag belonged to a passenger who had been refused boarding privileges in Los Angeles on TWA Flight No. 136.
11. Vaughn proceeded to lay open the bag on the floor of the TWA baggage agent's office. He had been advised that the owner's identification was in *747 the bag and that it would correspond with the claim check identification.
12. Vaughn discovered the weapon which is the subject of Count 1 of the indictment in a tie compartment of the bag after unzipping the opening of the compartment.
13. After this discovery Vaughn notified the nearby United States Marshal's office. Vaughn then resumed his search of the bag picking up the weapon to determine whether or not it was loaded. He determined that it was and put it back into the same tie compartment from which he had taken it, allowing the handle or butt of the weapon to be exposed to view.
14. Deputy United States Marshal Joseph Reichwein entered the TWA baggage agent's office, at approximately 3:30 P.M. (CST). Reichwein unaidedly observed the exposed portion of the weapon and seized the weapon from the bag and unloaded from it the cartridges which are the subject of Count 1 of the indictment. Immediately thereafter the box of cartridges, which is also the subject of Count 1 of the indictment, was seized from the same tie compartment.
15. Section E of the TWA Passenger Service ManualLost and Found Procedures reads in part as follows:
"E. Unclaimed Baggage
1. If baggage with proper destination tag is unclaimed, efforts will be made to determine ownership. A search of the contents, will be made to establish possible ownership and contact."
16. The seizure of this weapon and ammunition was effected without a search warrant.
17. Deputy Reichwein received the baggage owner's description and the name "Page" as identification from Vaughn who had received this information from the TWA Los Angeles office.
18. At approximately 5:35 P.M. on February 2, 1972, TWA Flight No. 194 arrived in St. Louis from which flight defendant disembarked. Defendant was met in the air terminal area by Deputy Reichwein. Defendant answered the description of the owner of the bag given him by the TWA personnel. Deputy Reichwein at this time arrested defendant without having secured a warrant for defendant's arrest.
19. On February 3, 1972, defendant was taken from the St. Louis County Police Department to the United States Marshal's office for processing and investigatory purposes.
20. After being processed on February 3, 1972, defendant and three deputy marshals entered an elevator, near the marshal's office, in the United States Court and Customs House in St. Louis. One of these deputy marshals, Deputy McCue, was at this time carrying a bathrobe belonging to the defendant. This bathrobe had been taken from the bag from which the weapon and the ammunition had been seized. Deputy McCue felt bulges in the lining of the defendant's bathrobe. Believing there was a weapon in the bathrobe McCue opened the lining and found and seized the drugs which are the subjects of Counts 2 and 3 of the indictment.
21. Analysis of the drugs seized from defendant's bathrobe disclosed them to be: 1) .72 grams of hashish, 2) 187.65 grams of high purity cocaine hydrochloride, 3) 12.8 grams of very pure cocaine, and 4) 17.45 grams of marihuana.
22. Defendant knowingly and intentionally possessed in the Eastern Judicial District of Missouri the items listed in special finding No. 21, above, with the intent to distribute the cocaine.
23. Defendant did not give notice to TWA that his baggage contained the aforementioned weapon and ammunition.

Conclusions of Law

Motion to Suppress
Defendant renewed at trial his motion to suppress as evidence the items seized as a result of the discovery and seizure of the weapon from his bag in the TWA baggage agent's office. The Court has taken into its consideration of this motion the evidence introduced during the trial and again concludes that defendant's motion to suppress must be denied.
*748 The federal agent who seized the weapon did so after discovering it in plain view without having to conduct a search of the bag. This federal agent was properly in the TWA baggage agent's office at the TWA agent's invitation and request. See Roberts v. United States, 332 F.2d 892 (8th Cir. 1964). The seizure of the weapon by the federal agent from the custody of TWA was proper. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967); Ker v. California, 374 U. S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1926).
Defendant argues that the weapon was seized by the federal agent pursuant to a federal search conducted by subterfuge through the TWA agent. For this proposition defendant relies heavily upon Corngold v. United States, 367 F.2d 1 (9th Cir. 1966). Corngold is distinguishable on its facts from the instant case. In Corngold the federal agents actively participated contemporaneously with the TWA agents and aided them in searching the packages. The evidence was not seized from plain view. Also, the federal agents had requested that the TWA agents open the package. The Court found that there was no evidence that "the package was in fact opened for any purpose of the carrier." Ibid. at p. 5.
In the instant case the search by the TWA agent was conducted for the proper purpose of identification. This search was conducted without the knowledge of the federal authorities and not at their request.
Defendant also relies upon Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1948). This case is also factually distinguishable. In Lustig, as in Corngold, the federal agent participated with the city police in the search which yielded the evidence. In the instant case the search by the TWA agent which yielded the weapon was completed before the federal agents were notified.
The ruling in Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L. Ed.2d 126 (1957), also cited by defendant, is inapplicable as in that case the wiretap which yielded the evidence was improper. The wiretap violated a federal statute prohibiting the use of a wiretap as evidence in a federal trial where the wiretap was conducted by anyone without the authorization of the sender of the communication.
The use, at the instant defendant's trial, of the weapon as evidence was proper. Harris, supra.
The federal agent, after seizing the weapon, had probable cause to believe that the bag contained other weapons or ammunition and was justified in searching for and seizing the ammunition.
Having seized the weapon and the ammunition and having established the description of the defendant, the federal agent had probable cause and grounds to believe that the defendant violated federal law by causing the weapon and ammunition to be carried interstate on the TWA flight. After identifying defendant with the description given him and with proper authority to arrest defendant, the federal agent did arrest defendant. 18 U.S.C. § 3053.
Later, and incident to this arrest, the bathrobe of defendant was searched and from it seized the quantities of cocaine, hashish and marihuana. The use of these items as evidence in the trial of the defendant was proper. United States v. Mehciz, 437 F.2d 145 (9th Cir. 1971) cert. den. 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139; and United States v. Stamps, 430 F.2d 33 (5th Cir. 1970).

Intent
Defendant strongly asserts that the Government failed to prove the requisite intent of the defendant to distribute the cocaine. The Court reasonably infers from the evidence adduced, including defendant's possession of such large quantities of cocaine and the high degree of purity of the cocaine, that defendant intended to distribute it. See United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969), cert. den. 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495.