**UNITED STATES of America,**
Appellee,

v.

**Alexander LISZNYAI, Appellant.**

No. 234, Docket 72–1655.

United States Court of Appeals,
Second Circuit.

Argued Nov. 14, 1972.

Decided Dec. 11, 1972.

Certiorari Denied March 19, 1973.
See 93 S.Ct. 1516.

Howard L. Jacobs, New York City, for appellant.

James P. Lavin, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., Walter J. Higgins, Jr., Peter F. Rient, Asst. U. S. Attys., on the brief), for appellee.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

KAUFMAN, Circuit Judge:

This appeal requires application of the teachings of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), to a warrantless seizure by Federal narcotics agents of laboratory equipment in "plain view" at the time they arrested Alexander Lisznyai for violation of the narcotics laws. Lisznyai, found guilty of manufacturing a stimulant drug in violation of 21 U.S.C. § 331(q),[1] argues that because the agents had seen the equipment earlier in the day, the plain view of the equipment was not "inadvertent" within the meaning of Coolidge v. New Hampshire, *supra*, at 464–473, 91 S.Ct. 2022. Thus, we are urged to invalidate the seizure in this case under the Fourth Amendment which, apart from a number of limited exceptions, *see, e. g.,* Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969) (search incident to arrest), invalidates warrantless searches and seizures. We conclude, however, that the search and seizure in this case are consistent with the rule announced in *Coolidge*. Accordingly, the judgment below is affirmed.

## I.

The critical facts in this case were adduced at a pre-trial hearing held by Judge Palmieri on Lisznyai's motion to suppress the seized equipment. The district judge denied the motion and allowed the introduction of the evidence at trial.[2] Testimony by government witnesses established the following chain of events. On three different occasions— February 9, 23, and 26, 1971—agents of the Federal Bureau of Narcotics and Dangerous Drugs (BNDD) observed Lisznyai purchase chemicals and laboratory equipment, including glassware, beakers, funnels, and tubing, at the offices of Ace Scientific Supply Co. (Ace) in Linden, New Jersey.[3] The chemicals purchased by Lisznyai are essential ingredients in the manufacture of amphetamine, a stimulant drug.

The first purchase occurred on February 9, after which Lisznyai was seen carrying supplies into his home after driving from Ace to his residence in Harrison, New Jersey. The following day, when Lisznyai took the supplies from his home and placed them in his automobile, BNDD agents were unable to maintain surveillance of the vehicle as it was driven from Harrison. On February 23, agents observed Lisznyai load a carton containing his purchases from Ace into a Volkswagen parked near the offices of Ace and then drive into Newark, New Jersey. In Newark, Lisznyai transferred the supplies to a second vehicle which he owned; this car also was driven to Harrison, where again Lisznyai was seen carrying the supplies into his home. Later in the day, agents observed Lisznyai drive from Harrison to New York City and enter apartment 2–A at 349 E. 65th Street,[4] carrying with him

1. Although Section 331(q) was repealed by the Controlled Substances Act, Pub.L. 91–513, § 701(a), 84 Stat. 1242, 1281 (Oct. 27, 1970), effective May 1, 1971, § 704(a), 84 Stat. 1284, Lisznyai's conviction under § 331(q) was proper, since he was arrested on March 2, 1971, and the indictment was filed on April 2, 1971. *See* § 702(a), 84 Stat. 1283.

2. The trial commenced on February 1, 1972. On February 4, the jury returned a verdict of guilty. Lisznyai was sentenced to six months probation by Judge Palmieri on count two of the indictment, which charged the substantive violation. Count one, which charged a conspiracy

between Lisznyai and Harry Neville, who resided in the apartment used in the illegal manufacturing of the drugs, was dismissed at the close of the government's case at trial.

3. Lisznyai represented to Ace that he was associated with Rutgers University, but an inquiry at Rutgers revealed that Lisznyai was neither a student nor an employee of Rutgers at that time, although he earlier had received a degree from Rutgers.

4. The apartment was the residence of Harry Neville, a former classmate of Lisznyai's at Rutgers.

a carton containing the merchandise he had purchased at Ace. In the final instance, on February 26, surveillance was broken after Lisznyai left Ace with his purchases, but subsequent investigation that day revealed his automobile parked in the vicinity of 349 E. 65th Street.

The surveillance continued on March 2, 1971, when Lisznyai was again seen entering apartment 2–A at approximately 3 p. m. Within ten minutes, two BNDD agents, Reilly and Franklin, knocked at the door of the apartment, representing themselves to be police officers in search of an alleged fugitive. They asked permission to use the telephone and Lisznyai, although noticeably upset by the visit, acceded to their request. Both agents were able to observe a "home laboratory" which had been erected on the kitchen counter. The "laboratory" consisted of glass containers, powders, chemicals, rubber tubing, and other such items.

Later that day, BNDD agents Goldenbaum and Franklin gained access to an apartment in an adjoining building from which they could view the kitchen window of apartment 2–A. Although their view was partially obstructed by an exhaust fan, the agents observed the home laboratory and the lower torso and hands of a person working with it. Goldenbaum and Franklin also detected an odor of ether beginning to emanate from the apartment between 6:00 and 6:30 p. m. A chemist from the Bureau of Narcotics and Dangerous Drugs was called, arriving at about 8:45 p. m. He confirmed that the odor was ether. Both the agents and the chemist knew that ether was employed in manufacturing amphetamine.

At about 9:00 p. m., the BNDD agents observed someone disassembling the laboratory equipment. Believing that Lisznyai was about to flee the apartment, Goldenbaum communicated with his superiors, who informed him they were making an effort to obtain a search warrant. Goldenbaum then entered the premises at 349 E. 65th Street with other BNDD agents to "secure" the apartment pending delivery of the warrant. As they proceeded up the stairs, they encountered two individuals, Harry Neville and William Carlin, standing directly in front of the open door of apartment 2–A. Goldenbaum showed his credentials to both men and when he inquired if either lived in the apartment, Neville answered affirmatively. Upon request by Goldenbaum, both Neville and Carlin stepped back into the apartment, followed by agents Goldenbaum and Lieneck. Lisznyai, who was seated on a couch, was immediately placed under arrest.[5] The agents then seized the partially-dismantled laboratory equipment which, because of the small, studio shape of the apartment, was visible to anyone entering the room. With assistance from the government chemist, the equipment was packed in cartons by the agents. Subsequent examination revealed traces of methamphetamine on a condenser and several funnels.

## II.

Although Lisznyai concedes that the seized equipment was in plain view of the officers when they entered the apartment to make the arrest,[6] he contends, citing Coolidge v. New Hampshire, *supra,* that the "plain view" exception to the Fourth Amendment's ban on warrantless searches and seizures does not apply in the case before us because the agents had seen the equipment during their pretense visit to the apartment earlier in the day. We are of the view, however, that nothing said in *Coolidge* requires us to invalidate the search and seizure in this case.

5. Also present, but not arrested, were Jacqueline Balestri, Neville's girlfriend, and Ronald Zarilla.

6. There was more than ample probable cause to support the arrest. Emanation of the ether odor and the observation from the apartment in the adjoining building, when added to the furtive and deceptive nature of Lisznyai's purchases and transportation of the equipment, warranted a prudent man in believing an offense had occurred. *See* United States v. Tramontana, 460 F.2d 464 (2d Cir. 1972).

*Coolidge* reiterated that only exigent circumstances will justify a bypass of the Fourth Amendment's warrant requirement. The Court disapproved of a warrantless search and seizure of an automobile parked in the driveway of Coolidge's home at the time of his arrest, although the vehicle obviously was in plain view, because the police knew in advance that the automobile would be there. The key distinction we recognize is that although the Court referred to only "inadvertent" discoveries of incriminating evidence as justifying a warrantless seizure incident to a legitimate arrest, 403 U.S. at 469, 91 S.Ct. 2022, Justice Stewart went on to emphasize that "it is well to keep in mind that we deal here with a *planned* warrantless seizure." 403 U.S. at 471 n. 27, 91 S.Ct. at 2041 (emphasis in the original). Thus, *Coolidge* teaches that where the police have ample opportunity to obtain a search warrant and the intention to seize the evidence is really the prime motivation for the arrest, the plain view exception does not apply. 403 U.S. at 472, 91 S.Ct. 2022. *Cf.* Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 S.Ct. 1663 (1948).

The facts presented in this appeal, however, reveal markedly different circumstances from those present in *Coolidge.* Significantly, the BNDD agents acted to arrest Lisznyai only when they observed individuals in the apartment proceeding to dismantle the equipment. The agents reasonably concluded that Lisznyai's flight was imminent and that incriminating evidence in the apartment was about to be carried away. Rather than revealing a "planned warrantless seizure," the record shows efforts to obtain a search warrant. The situation suddenly having become acute, immediate action by the agents at the scene was required. *See* United States v. Titus, 445 F.2d 577 (2d Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.

2d 274 (1971). *Coolidge* does not require suppression of evidence seized in plain view during an arrest where the circumstances have become exigent merely because prior knowledge of the evidence was acquired shortly before the seizure.[7] There is no basis to believe that allowing a warrantless seizure in these circumstances would subvert any interests under the Fourth Amendment. Accordingly, the laboratory equipment was properly seized without a warrant and admitted into evidence.

We have considered Lisznyai's other contentions and find them without merit. The conviction is affirmed.

---

7. Moreover, we do not agree that the agents should have sought a search warrant earlier in the day. Such a stringent holding under the circumstances present here would penalize cautious agents who want to make certain of their case before applying to a magistrate for a warrant.