**Michael Hugh BELL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1717.**

Supreme Court of Alaska.

March 1, 1974.

---

Herbert D. Soll, Public Defender, Lawrence J. Kulik, Anchorage, Dick Madson, Fairbanks, Asst. Public Defenders, for appellant.

John E. Havelock, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., James M. Hackett, Asst. Dist. Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

As a result of an investigation by security guards and state troopers at the Wien Airlines freight office in Fairbanks, Alaska, Michael Hugh Bell was arrested while in possession of a forty-pound crate of marijuana. He was convicted of possession of hallucinogenic drugs with intent to sell, in violation of AS 17.12.010 and 17.12.110 (b). Substantial questions have been raised concerning the application of the constitutional prohibitions against search and seizure [1] to air freight shipments.

Richard Rae Graves, a cargo handler for Wien Airlines in Fairbanks, became suspicious of the contents of an air freight shipment consigned to the appellant, Michael Bell. On several preceding days and on Sunday, the day in question, Bell made telephone calls to Wien inquiring about the arrival of this particular shipment which Bell stated contained clothing. The cargo handler recalled that upon another occasion Bell had received a carton which he claimed to be produce, but the package rattled, and it was so light that the cargo handler knew it did not contain produce.

---

1. The fourth amendment to the United States Constitution provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

   The Alaska Constitution, art. I, § 14 provides:
   The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Nevertheless, he had delivered the package to Bell. Based on this incident and Bell's appearance,[2] he was distrustful of the second package's stated contents.

After accidentally dropping the package while moving it to a shelf, Graves opened it to ascertain if it was damaged. He candidly admitted that he would probably have opened it in any event due to his presentment that it contained contraband.

Graves and his helper observed that the shipping carton, which was approximately 3' x 2' x 2' in size, contained a number of small packages, each wrapped in a green plastic garbage bag. They noticed that one of the small packages was ripped open. They observed the contents of the torn package to be a vegetable material similar to grass or weeds. Graves reported the suspicious shipment to the security office at Fairbanks International Airport. An airport security officer was promptly assigned to look into the matter.

Upon his arrival at the Wien cargo area, the security officer, Thurman Jones, noted that the shipping container had been opened at the bottom. The box held 12 to 15 green plastic bags individually wrapped. He also noted one of the bags was split or torn open and revealed dried vegetable matter. The security officer removed the torn bag and a number of the other green packages from the container. He discovered a small clear plastic package inside of which were two hand-rolled cigarettes. A short time later the lieutenant in charge of the airport security detail arrived. He received a

report from his officer, and the state police were summoned.

A state trooper equipped with a Narcodol test kit responded to the call. A portion of the contents of the torn green plastic bag and part of the hand-rolled cigarettes were submitted to a chemical analysis which indicated the presence of marijuana.

After the discovery, the shipment was repackaged by the cargo handler. In the early afternoon of the same day, appellant claimed the shipment at Wien's freight office. He was arrested immediately upon leaving the freight office, and the package was seized by the state police. The carton was found to contain approximately forty pounds of marijuana and a small quantity of citrus fruit. Thereafter appellant was indicted and convicted of possession of marijuana for sale. This appeal followed.

Bell makes two arguments in this appeal. He contends first that the trial court erred in admitting the marijuana into evidence because it was the product of an unconstitutional search and seizure.[3] He also contends that the evidence at trial was insufficient to establish that he knowingly possessed a prohibited drug.

■ There are three separate components of the search which must be analyzed in order to rule on the search and seizure issue: (1) the initial inspection by Graves; (2) the actions of the airport security officer; and (3) the conduct of the state troopers. Since no search warrant was obtained, the state had the burden of proving that the search met constitutional requirements.[4]

2. Bell was described as "long, dirty haired". We do not uphold classifications based on the length of one's hair or even its cleanliness. We note, however, that there were substantial independent reasons for suspicion that the package contained contraband—the cargo handler's prior experience with Bell and the repeated calls at the end of May, when weather is clement, for a package supposedly containing clothing.

3. Judge Warren William Taylor denied a pretrial motion to suppress, and Judge Hepp conducted the trial and admitted the evidence over objection. Bell requests that all of the evidence adduced at both the pre-trial sup-

pression hearing and the trial should be considered by us in ascertaining whether an illegal search and seizure took place in the Wien air freight facility, and we have considered all of that evidence as a basis for our opinion.

4. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); People v. McKinnon, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d 1097, 1101 (1972) cert. denied, 411 U.S. 931, 93 S.Ct. 1891, 36 L.Ed.2d 390 (1973).

■ We start with the cargo handler's inspection of the shipping container. At the time of his search, Graves was acting in a purely private capacity, not as an agent of the police. There was no evidence that he had cooperated with the police in the past, had been instructed by them, or had any prior contact with them pertaining to drug detection. We thus are not confronted with the situation involved in Corngold v. United States,[5] where government agents initiated and participated in a search of air cargo by TWA employees. A search by a private citizen not acting in conjunction with or at the direction of the police does not violate the constitutional prohibitions against unreasonable search and seizure.[6]

The Wien Airline tariff approved by the Civil Aeronautics Board specified: "All shipments are subject to inspection by the carrier, but the carrier shall not be obligated to perform such inspection." As an employee of the carrier Graves was accordingly authorized to inspect the shipment.[7]

There is no dispute that an airline inspection undertaken at the initiative of airline employees, for independent airline purposes, and without government participation, is a private search and is not subject to the requirements of the fourth amendment. Independent airline purposes for such inspections apparently include detection of insurance frauds, detection of rate cheating through improper declaration of contents, ensuring that airline facilities are not being used in the commission of a crime, protection of the aircraft and other freight, identification of the owner of unclaimed luggage, and the insulation of the airline from criminal liability for transporting certain items.[8]

■ Graves had cause to inspect the package to detect improper declaration of contents, to ensure that the airline facilities were not being used in the commission of a crime, to insulate the airline from criminal liability for transporting contraband and to ascertain possible damage.[9] We hold that his search did not violate Bell's rights.

The airport security officer who investigated the suspicious shipment, on the other hand, was an agent of the state against whom the prohibitions of the fourth amendment apply, despite the fact that he was an employee of the Department of Public Works, and not the Department of Public Safety. The controlling principle does not depend so much upon which department of

5. 367 F.2d 1 (9th Cir. 1966) discussed in McGalliard v. State, 470 P.2d 275, 278–279 n. 7 (Alaska 1970).

6. Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048, 1051 (1921); Cash v. Williams, 455 F.2d 1227, 1230 (6th Cir. 1972); United States v. Winbush, 428 F.2d 357, 359 (6th Cir. 1970) cert. denied, 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970).

7. In McGalliard v. State, 470 P.2d at 277, we upheld the right of an employee of a transportation company to break the seal and enter into the interior of a van based on an independent unrestricted right of access set forth in the company's tariff and National Motor Freight regulations.

8. Note, "Airport Freight and Passenger Searches: Application of Fourth Amendment Standards," 14 W. & M.L.Rev. 953, 961 (1973) [footnotes omitted] citing Gold v. United States, 378 F.2d 588 (9th Cir. 1967); United States v. Echols, 348 F.Supp. 745 (E.D.Mo.1972) aff'd, 477 F.2d 37 (8th Cir. 1973); United States v. Averell, 296 F.Supp. 1004, 1009, 1011 (E.D.N.Y.1969); People v. McKinnon, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d 1097, 1107 (1972) cert. denied, 411 U.S. 931, 93 S.Ct. 1891, 36 L.Ed.2d 390 (1973); People v. McGrew, 1 Cal.3d 404, 82 Cal.Rptr. 473, 462 P.2d 1, 3 (1969) cert. denied, 398 U.S. 909, 90 S.Ct. 1689, 26 L.Ed. 2d 67 (1970); State v. Larko, 6 Conn.Cir. 564, 280 A.2d 153 (1972).
It also has been held that an airline inspection resulting from an attempt to protect luggage which has sprung open is a search for the independent purposes of the airline. See Andreu v. State, 124 Ga.App. 793, 186 S.E. 2d 137, 139 (1971).

9. We are not here confronted with a baseless airline employee search or one which is unrelated to legitimate airline purposes and therefore do not reach those issues.

state government employs the officer, but instead upon the nature of the duties performed and the part the officer may have played in the course of events leading to appellant's arrest and the seizure which followed. His duties were to provide crash and rescue services and to assure physical security in the airport and parking areas. He carried a sidearm. When the cargo handler opened the shipment, he believed it contained drugs. This is what led him to call the airport security office. The security officer who was dispatched made an investigation. We hold that the security officer is required to meet the same standards imposed upon any other state or local law enforcement officer in performing his duties.[10]

■ When security officer Jones arrived, the carton was open so that the open package exhibiting vegetable material similar to grass or weeds was in plain view. Jones was a former police officer with training in drug and narcotics identification. On seeing this material, he was placed in a position analogous to that of the police officer in Daygee v. State.[11] In that case, after stopping a car for speeding, the officer

observed through the car window a clear plastic bag which contained a leafy substance with seeds in it. We stated that:

> [T]he officer's sighting and demand for the bag of marijuana was not an illegal search and seizure, as the bag was in the officer's plain view. . . . Nor does the seizure of the marijuana which the officer saw violate the seizure restriction of the fourth amendment. An officer may seize evidence which is legitimately in his plain sight. It is not necessary that the contraband be positively identified before it is seized.[12]

While Jones did not positively declare that he believed the substance was marijuana, it strains credulity to conjure some other identification for this material found in a carton shipped as "clothing". Admittedly, it could have been hay, tea or spices, but officers are not required to eliminate every far-fetched conjectural hypothesis before seizing an item as contraband.

■■ Jones was therefore legally justified in removing the torn package from the container. He likewise had the right to remove the other similar material.[13]

10. The security officer's conduct was clearly subject to the prohibitions of the fourth amendment, as would be the conduct of any official acting within the scope of his duties. Almeida-Sanchez v. United States, 413 U.S. 266, 270, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596, 601 (1973) (Border Patrol officials); See v. City of Seattle, 387 U.S. 541, 545–546, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943, 945, 947–948 (1967) (fire inspectors); Camara v. Municipal Court, 387 U.S. 523, 525, 534, 87 S.Ct. 1727, 1728, 1733, 18 L.Ed.2d 930, 933, 938 (1967) (housing inspectors); Jones v. United States, 357 U.S. 493, 495, 498, 78 S.Ct. 1253, 1255, 1256, 2 L.Ed.2d 1514, 1517–1519 (1958) (alcohol tax agents). Cf. Tarnef v. State, 512 P.2d 923, 934–935, n. 22 (Alaska 1973).

11. 514 P.2d 1159 (Alaska 1973).

12. Id. at 1162, 1163 [footnotes omitted]. Justice Connor and Chief Justice Rabinowitz, although dissenting in Daygee, agreed that the seizure of the plastic bag of marijuana was valid. Id. at 1169. See also Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968), quoted

in State v. Davenport, 510 P.2d 78, 85 (Alaska 1973):

> [O]bjects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence.

13. Jones had clear and convincing evidence that the packages contained marijuana, and he had a right to be in the Wien cargo area looking at the crate. Although inferential reasoning rather than direct sight of the contraband itself has often been held sufficient to justify a "plain view" seizure of a package containing contraband, courts have not articulated the standard of certainty of the presence of contraband required when the state seeks to justify a seizure partly upon plain sight of an object and partly upon reasoning as to the contents of the object. United States v. Wheeler, 148 U.S.App.D.C. 204, 459 F.2d 1228 (1972); United States v. Avey, 428 F.2d 1159 (9th Cir. 1970) cert. denied, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 139 (1970); Hiet v. United States, 125 U.S.App. D.C. 338, 372 F.2d 911 (1967); Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966)

This resulted in the exposure of the clear plastic sack containing two hand-rolled cigarettes. The cigarettes were also properly seized as contraband, in view of their appearance [14] and their discovery in the carton containing other contraband items.[15] When the state trooper was called, he likewise had the right to seize the contents of the container, and therefore his chemical analysis of material from the torn package was proper.

In view of our holding, it is unnecessary for us to decide whether the officers were confronted by such an exigency as to justify the search.[16]

■ In addition to his search or seizure challenge, Bell claims that the evidence was insufficient to establish that he was aware that he possessed an illicit drug.[17]

Testimony at the trial established that on the morning of May 30, the date of appellant's arrest, a telephone call inquiring about the shipment was received at the Wien freight office. The call was made by a person who purported to be Michael Bell. On several days preceding, other telephone calls inquiring about the shipment had also been received from a person representing himself to be Michael Bell. The person calling was told in each instance that the shipment had not arrived. When this information was given on the morning of May 30, the caller requested that a trace action be placed on the shipment. He provided a great deal of information concerning the shipment, including the number of the air waybill, the purported contents of the shipment, and its approximate weight. Wien received a sec-

---

cert. denied, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967) cert. denied, 393 U.S. 985, 89 S.Ct. 460, 21 L.Ed.2d 446 (1968); *cf.* Ker v. California, 374 U.S. 23, 36–37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726, 740 (1963) (plurality opinion); *but see* People v. Marshall, 69 Cal.2d 51, 69 Cal.Rptr. 585, 442 P.2d 665, 668 (Cal.1968). We hold that clear and convincing evidence of the nature and presence of contraband within a package, such as Jones had, is sufficient to sustain a "plain view" seizure. We do not decide whether some lesser standard, such as probable cause, would suffice; such a discussion is not material to the outcome of this case, and the parties have not briefed or argued the question.

14. It is common knowledge that marijuana is often smoked in hand-rolled cigarettes.

15. We note that four Justices of the United States Supreme Court suggested that the evidence or contraband seized with a "plain view" justification must be discovered "inadvertently." Coolidge v. New Hampshire, 403 U.S. 443, 465–473, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564, 582–587 (1971). But this construction of "plain view" was as vigorously opposed as supported. *Id.* at 505–510, 91 S.Ct. at 2057–2060, 29 L.Ed.2d 606–608 (dissenting opinion of Black, J.); *Id.* at 492, 91 S.Ct. at 2051, 29 L.Ed.2d at 598 (dissenting opinion of Burger, C. J., joining Black, J. on this issue); *Id.* at 510, 91 S.Ct. at 2060, 29 L.Ed.2d at 608 (dissenting opinion of Blackmun, J., joining Black, J. on this issue); *Id.* at 510–522, 91 S.Ct. at 2060–2065, 29 L.Ed.2d at 608–616 (dissenting opinion of White, J., expressing opinions of "plain

view" similar to those of Black, J.). Justice Harlan did not discuss "plain view" searches. Even if this non-majority suggestion has become incorporated in the law of search and seizure, its facial ambiguity has been further confounded by interpretation. *See* United States v. Pacelli, 470 F.2d 67, 70–71 (2d Cir. 1972) cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973); United States v. Lisznyai, 470 F.2d 707, 709–710 (2d Cir. 1972) cert. denied, 410 U.S. 987, 93 S.Ct. 1516, 36 L.Ed.2d 184 (1973); State v. Murray, 8 Wash.App. 944, 509 P.2d 1003, 1006 (1973). Since inadvertence was not briefed by the parties, we decline to consider this potential issue.

16. The California Supreme Court has recently held that exigent circumstances were involved in an air freight search. *See* People v. McKinnon, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d 1097 (1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1891, 36 L.Ed.2d 390 (1973), overruling People v. McGrew, 1 Cal.3d 404, 82 Cal.Rptr. 473, 462 P.2d 1 (1969) cert. denied, 398 U.S. 909, 90 S.Ct. 1689, 26 L.Ed. 2d 67 (1970) and Abt v. Superior Court, 1 Cal.3d 418, 82 Cal.Rptr. 481, 462 P.2d 10 (1969). (Chief Justice Wright, who replaced Chief Justice Traynor on the California Supreme Court, established the new majority position although none of the other three justices who had been in the *McGrew* majority altered his position).

17. This court has previously stated that the state must demonstrate *knowing* possession. Judd v. State, 482 P.2d 273, 280 (Alaska 1971); Egner v. State, 495 P.2d 1272, 1274 (Alaska 1972).

ond telephone call regarding the shipment early in the afternoon of May 30. Once again, the caller identified himself as Michael Bell. On this occasion, he was told that the shipment had arrived and could be picked up. Within an hour, appellant appeared at the freight office to receive the shipment. He signed the bill of lading when the shipment was delivered to him. This is ample evidence from which the jury could infer that the caller was indeed Michael Bell, that he was seriously concerned about the shipment, that he possessed a great deal of knowledge about it, and that he did in fact know that the shipment contained marijuana.

The judgment is affirmed.

RABINOWITZ, Chief Justice (dissenting).

I cannot agree with the court's interpretation of the record in this case. My disagreement centers on the majority's conclusion that security officer Jones' warrantless seizure of the marijuana was authorized under the plain view exception to the search warrant requirements of both the United States and Alaska constitutions.

The principle foundation for the majority's conclusion rests in analogizing the facts of the case at bar to those found in Daygee v. State, 514 P.2d 1159 (Alaska 1973). In my view, comparison of the two cases compels the conclusion that officer Jones conducted an unauthorized, warrantless search of the contents of the carton in question.

I think it instructive to reiterate what was stated in *Daygee* regarding the plain view exception. There we said:

An officer may seize evidence which is legitimately in his plain sight. It is not necessary that the contraband be positively identified before it is seized. The officer, who had extensive training

in detecting marijuana, testified that he recognized the smell of marijuana burning and that the substance in the bag looked like marijuana, which he had seen previously. The officer thus had cause to believe a misdemeanor was committed in his presence other than the traffic event. The seizure of this item was therefore valid.[1]

Unlike *Daygee,* in the instant case officer Jones never testified that the contents of the one torn opaque plastic bag, which were partially exposed, looked or smelled like marijuana. It was only after officer Jones had searched the contents of the carton and cigarettes that he "became rather suspicious" and called his supervisor.

As far as this record shows, officer Jones possessed "clear and convincing evidence" that the packages contained contraband only subsequent to his unauthorized search of the contents of the open carton and his discovery of the two hand-rolled cigarettes. Prior to the time officer Jones made his search of the carton, his knowledge of the surrounding circumstances was that a Wien cargo handler, Richard Graves, had called airport security to report that he had a package, that he did not know what was in it, and that he would like to have security look at it.[2] After he arrived at the Wien cargo area, Graves showed him the box and said there was something suspicious about the box. Jones further testified in viewing the box one torn green package looked peculiar in that "some dried vegetation matter, leaves and things of this nature" were visible.

Thus, I conclude that this record falls far short of demonstrating by clear and convincing evidence that officer Jones knew the contents of the carbon were contraband without the benefit of the knowledge he derived from his warrantless search of the interior of the carton. To hold oth-

1. Daygee v. State, 514 P.2d 1159, 1162–1163 (Alaska 1973).

2. The record is devoid of any indication that officer Jones was informed, prior to making his search, that the contents of the carton had been designated "clothing" for shipping purposes.

erwise, in this factual context, seems to me to ascribe unwise and unwarranted breadth to the plain view exception to the search warrant requirements of the Federal and Alaska constitutions.