Judith M. BERGMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4696.

Court of Appeals of Alaska.

May 27, 1994.

---

Marcia E. Holland, Asst. Public Defender, Fairbanks and John B. Salemi, Public Defender, Anchorage, for appellant.

James L. Hanley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before COATS and MANNHEIMER, JJ., and WOLVERTON, District Court Judge.[*]

## OPINION

COATS, Judge.

Judith M. Bergman appeals her conviction for importing alcohol into the village of Alla-

---

[*] Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

1. Allakaket is an established village located northwest of Fairbanks on the Arctic Circle. The

kaket[1] in violation of AS 04.11.496(b). We affirm.

In September of 1991, Bergman planned to travel from Allakaket to Fairbanks. Before departing, Bergman received a sum of money from two of her brothers, Albert and Wayne Bergman. The three agreed that Bergman would use the money to purchase whiskey after she arrived in Fairbanks. The Bergmans were aware that it was unlawful to import liquor into Allakaket.

When Bergman arrived in Fairbanks, she purchased one case of whiskey for herself and one case each for Albert and Wayne. She packed the whiskey into three white cardboard boxes and sent the boxes to Allakaket via fourth-class mail without a return address.

Meanwhile, another of Bergman's brothers, Shawn Bergman, overheard Albert talking on the telephone to someone in Fairbanks about the importation of whiskey into the village. Shawn was apparently concerned about alcohol-related problems within his family and reported the impending shipment to the Village Public Safety Officer, Harold David. Shawn informed Officer David that the whiskey would be arriving via Wright's Air Service and would be packaged in three white boxes.

The following morning Officer David alerted the Allakaket Postmaster that some whiskey, packaged in three white boxes, might soon be arriving by mail. The mail, including the boxes of whiskey, arrived by Wright's Air Service later that day. The postmaster notified Officer David that the suspected boxes had arrived and then telephoned United States Postal Inspector William Skytta Jr. for further instructions.

Skytta was aware that, pursuant to postal regulations, he could authorize the warrantless inspection of fourth-class packages to determine whether such packages contained prohibited or nonmailable materials (e.g. alcoholic beverages). After determining that the boxes had been mailed fourth-class, Skyt-

village has elected to prohibit the sale and importation of alcoholic beverages within its boundaries. AS 04.11.496(b) and AS 04.16.200(e)(2).

ta instructed the postmaster to inspect them. The inspection revealed eleven bottles of whiskey in each of two boxes and twelve bottles of whiskey in a third box. At Skytta's request, the postmaster repacked the boxes and sent them to Skytta's office in Anchorage.

When Skytta received the boxes, he confirmed that they had originally been mailed with fourth-class postage and that each box contained the aforementioned quantities of whiskey. Under such circumstances, the routine procedure in the Anchorage postal inspector's office is not to seek prosecution on a federal level, but to notify local law enforcement officials and determine whether they wish to pursue prosecution at the state level. If local officials do not wish to pursue the matter, postal inspectors ordinarily confiscate the nonmailable materials and destroy them. Consistent with this procedure, Skytta telephoned Alaska State Troopers who indicated that they wished to investigate the importation of whiskey into Allakaket. Skytta then shipped the boxes of whiskey back to the Allakaket postmaster with the intent that Alaska State Troopers would eventually seize the boxes. Skytta apparently directed the postmaster to hold the boxes until a trooper could pick them up.

Thereafter, Alaska State Trooper Jeffrey Manns traveled to Allakaket to investigate the alleged importation of whiskey into the village. Manns was aware that postal authorities had previously inspected the boxes and found them to contain whiskey. Upon arriving in Allakaket, Manns telephoned Skytta who confirmed that the boxes contained whiskey and that, as fourth-class mail, they were subject to warrantless inspection by the post office. Manns also telephoned the Fairbanks District Attorney's Office and was advised that he did not need a warrant to search and seize the boxes because they had already been searched by postal authorities. Manns proceeded to the Allakaket post office and seized the boxes of whiskey without a warrant. He completed his investigation by obtaining confessions from Bergman and her brothers, Albert and Wayne.

A grand jury indicted Bergman on one count of prohibition of sale and importation of alcoholic beverages. AS 04.11.496(b) and AS 04.16.200(e)(2). Before trial, Bergman moved to suppress the whiskey, arguing that the warrantless search and seizure of the boxes was unlawful because postal authorities had opened the boxes at the direction of the state, rather than pursuant to their official duties as postal employees. The state opposed Bergman's motion, claiming that no warrant was required because the state did not take possession of the boxes until after postal employees had independently undertaken a valid inspection of the boxes and had seized them without encouragement or participation from the state.

In response to Bergman's motion, an evidentiary hearing was held before Superior Court Judge Niesje J. Steinkruger. Judge Steinkruger denied Bergman's motion and found that although postal authorities had inspected the boxes as a result of Officer David's tip, their inspections were authorized because the boxes were fourth-class mail and because, rather than acting as agents of the police, the postal employees were acting in their official capacity to prevent the delivery of nonmailable matter. Judge Steinkruger concluded that Trooper Manns' warrantless search and seizure of the boxes did not violate the Alaska or federal constitutions because Manns had simply asserted state control over evidence which had already been legally obtained by postal authorities.

Bergman was tried and convicted before Superior Court Judge James A. Hanson. On appeal, Bergman renews her claim that the warrantless search and seizure of her boxes was illegal, but abandons her earlier argument that the initial warrantless postal inspections were conducted at the state's behest. Bergman now concedes that the initial inspections of her boxes by postal authorities were conducted for a lawful postal purpose independent of state involvement. Yet, Bergman argues that because various postal regulations prevented postal authorities from surrendering the boxes of whiskey directly to state law enforcement officers, Trooper Manns' warrantless search and seizure of the boxes was unreasonable. Bergman concludes that the warrantless search did not fall within any recognized exception to the

warrant requirement and therefore violated both the Alaska and federal constitutions.

■ The Fourth Amendment to the United States Constitution and article I, section 14 of the Alaska Constitution bar unreasonable searches and seizures. A warrantless search is per se unreasonable and the police may not ordinarily search a package without a warrant unless the search falls within a recognized exception to the warrant requirement. *Ahkivgak v. State*, 730 P.2d 168, 171 (Alaska App.1986). Since no warrant was obtained in this case, the state bears the burden of proving that the search of Bergman's boxes was reasonable. *Bell v. State*, 519 P.2d 804, 806 (Alaska 1974).

■ One exception to the warrant requirement permits the warrantless inspection of fourth-class packages to determine the mailability of their contents. *Ex parte Jackson*, 96 U.S. (6 Otto) 727, 24 L.Ed. 877 (1877); *United States v. Riley*, 554 F.2d 1282, 1283 (4th Cir.1977); *Santana v. United States*, 329 F.2d 854, 856 (1st Cir.), *cert. denied*, 377 U.S. 990, 84 S.Ct. 1915, 12 L.Ed.2d 1044 (1964). "[I]t is obvious that one who chooses to transmit a parcel through the mails using fourth class postage accepts the possibility that the contents will be examined by postal authorities in the performance of their duties." 3 Wayne R. LaFave, *Search & Seizure* § 10.3(b) at 681 (2d ed. 1987) (quoting *Commonwealth v. Dembo*, 451 Pa. 1, 301 A.2d 689, 692 (1973) ). Bergman had no greater expectation of privacy in shipping her package by mail than she would have if she had sent it by another common carrier. *See Bell v. State*, 519 P.2d 804 (Alaska 1974).

■ Having conceded the lawfulness of the initial intrusion, Bergman simply had no reasonable expectation of privacy in the transmitted boxes. Once the whiskey had been lawfully exposed to the plain view of postal authorities, nothing of constitutional significance prevented those authorities from surrendering the whiskey, as contraband, and without a warrant, to law enforcement officers charged with investigating violations of state law. *Bell*, 519 P.2d at 806. Trooper Manns' recovery of the boxes effectuated no greater intrusion than that which resulted from the preceding postal inspections. No superseding event or change in circumstances occurred between the postal inspections and Trooper Manns' recovery of the boxes that would have given Bergman a reasonable expectation of privacy in her fourth-class parcels.[2] Under these circumstances, Trooper Manns' warrantless search and seizure of Bergman's boxes was entirely reasonable and violated neither the Alaska nor the federal constitutions.

The conviction is AFFIRMED.

BRYNER, C.J., not participating.

---

**2.** We need not consider Bergman's contention that surrender of the boxes by postal authorities offended some postal regulation. Bergman did not argue this proposition to the trial court so we review for plain error only. Because evidence obtained in violation of an agency regulation does not necessarily require suppression, we find no plain error occurred in this case. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Irvine*, 699 F.2d 43, 46 (1st Cir.1983); *United States v. Clark*, 695 F.Supp. 1257, 1262 (D.Me.1988).