Vernon S. PRICE, Appellant,

v.

STATE of Alaska, Appellee.

No. 2794.

Supreme Court of Alaska.

July 1, 1977.

John Hagey, Asst. Public Defender, Fairbanks and Brian Shortell, Public Defender, Anchorage, for appellant.

Natalie K. Finn, Asst. Dist. Atty. and Harry L. Davis, Dist. Atty., Fairbanks, for appellee.

## OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

RABINOWITZ, Justice.

After separate jury trials in the superior court, Vernon Price was found guilty of the crime of attempting to procure a female for prostitution, a violation of AS 11.40.350,[1] and two separate counts of burglary in a dwelling, a violation of AS 11.20.080.[2] In February of 1973, Price was sentenced to a term of 10 years imprisonment for the offense of procuring for prostitution and to 10 years on each of the burglary convictions. The 10-year terms for the burglary convictions were made to run consecutively to each other, as well as consecutively to the 10-year sentence which was imposed on the offense of attempting to procure a female for prostitution. Thus, appellant Vernon Price was sentenced to a total of 30 years imprisonment.

Price's trial counsel filed a notice of appeal on February 5, 1973 and notice of sentence appeal on February 13, 1973. Thereafter, on June 22, 1973, Price's appeal and sentence appeal from his three felony convictions were dismissed for failure to file a brief within the prescribed time. In December 1976, the Public Defender Agen-

---

1. AS 11.40.350 reads:

   A person who induces, entices or procures, or attempts to induce, entice or procure a female for the purpose of prostitution or concubinage, or for other immoral purpose, or to enter a house of prostitution in the state, is guilty of a felony, and upon conviction is punishable by imprisonment in the penitentiary for a period of not less than two years nor more than 20 years, or by a fine of not less than $1,000, or by both.

2. AS 11.20.080 provides:

   A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

cy filed a "Motion to Reinstate Appeal and Sentence Appeal" which was opposed by the state. Upon consideration of the motion and the state's opposition, this court entered an order denying the motion to reinstate the merit appeals and granting the motion to reinstate the sentence appeals.[3] This sentence appeal followed.

At the time of sentencing appellant Vernon Price was 33 years old, married and was supporting two stepsons. Price's troubles began at the age of 12 when his father died. Unable to get along with his stepfather, Price began to skip school and became difficult to manage. Due to disagreements with a second stepfather, Price and his younger brother Kenneth moved about the western states seeking employment during the 1950's. Price dropped out of the 10th grade at North Bend High School in Oregon at the age of 15, but eventually completed the GED examination while confined in the Oregon State Correctional Institution.

The presentence report indicates that Price has had difficulty with alcohol; that he has an IQ level of "bright normal"; that his psychological evaluation established a pattern which was described "as a psycho-

pathic personality characterized by immaturity, impulsiveness, difficulty in profiting from experience, and a lack of mature judgment or forethought"; that he had been married three times; and that he had worked as a logger, faller, catskinner, and auto body worker.

Of particular significance to this sentence appeal is Price's past adult criminal record. From the presentence report the following picture emerges: In 1959 Price was convicted of disorderly conduct in Reno, Nevada;[4] in 1959 in Grants Pass, Oregon, Price was convicted of forgery and sentenced to a term of 3 years, and was paroled;[5] in 1961 for violation of his parole, Price was sentenced to a term of 2 years and approximately 2 months; in March of 1961 Price was convicted in Salem, Oregon, of two counts of receiving and concealing for which he received a sentence of 3 years;[6] and in 1963 at Empire, Oregon, Price was convicted of receiving and concealing and received a 4-year sentence;[7] in 1966 Price was convicted of his fifth felony, namely, burglary, and received a sentence from 6 months to 15 years;[8] and in Fairbanks,

---

**3.** Justice RABINOWITZ and Justice DIMOND, Pro Tem., dissented from the portion of the order denying the motion to reinstate the substantive appeals. Justices CONNOR and BURKE dissented from the portion of the order granting the motion to reinstate the sentence appeals.

**4.** The circumstances of this offense as related by the presentence report are as follows:

A group of three were attempting to cash checks around Reno and became belligerent when being questioned about the same, and would not give proper account of themselves. Apparently released twelve hours later.

**5.** With respect to this conviction, the presentence report states, "The subject and his wife cashed bad checks. Paroled for detainer November 10, 1960, which was dropped the same day."

**6.** The presentence report states Price "[w]ith use of a car rental on February 10th, became involved with stolen merchandise. Made a signed statement to having broken into a grocery store among several varied written statements."

**7.** As to this offense the presentence report states:

On April 6, 1963 a market was burglarized of $2,000.00 worth of merchandise, and later that morning Price gave a stolen radio from that market to an acquaintance, absconded to Fairbanks to live with his brother and was arrested by the FBI on July 20, 1963 for unlawful flight; extradited, returned, and found not guilty of burglary. Was subsequently charged with receiving and concealing and found guilty by jury and was sentenced on November 4, 1963. Paroled May 18, 1966. While awaiting trial at Coos County Jail, apparently made two escape attempts. On one occasion, the bars in his cell were sawed and he tried to remove the bars from the ventilator the night before being transferred.

**8.** Here the presentence report reads:

Burglarized an inn, presumably for money and drinks. The subject and codefendant were apparently quite drunk. He jumped bail August 27th and traveled with his wife to Jackson Hole, Wyoming where he became employed until he felt authorities were moving in. Then he moved west and was arrested in Idaho and returned to Eureka on August 7, 1967. Convicted of second degree burglary. Paroled May 10, 1970 to Alaska.

Alaska, in 1970 Price was convicted of assault and battery and was sentenced to 90 days imprisonment with 60 suspended.[9]

The presentence report also dealt with the appellant's most recent convictions. Concerning the two convictions for burglary in a dwelling which are now on appeal to this court, the presentence report indicates that on April 1, 1972, Price had obtained the services of two offenders who were on work release

> for the alleged purpose of assisting him with home remodeling activities. Instead, on that particular day, they spend a good part of their time drinking. That afternoon they drove around. They first visited a home on ½ Mile Brock Road, and then later at 4½ Mile Steel Creek Road. According to the statement of one of the codefendants, ·it was Mr. Price's idea.

As to the attempting to procure a female for prostitution conviction, which is also part of the instant sentence appeal, the presentence report states, in part:

> This conviction arose out of reports made by persons who were approached approximately August 31, 1972, at the City Bar in Fairbanks. At that time, two females at the City Bar were offered employment to work as prostitutes at the Evergreen in Delta and that it would be worth approximately $1,000.00 to the girls to come along.

The author of the presentence report concluded:

> From the standpoint of probationary possibilities, this officer feels that there are none whatsoever at this time. It appears that this defendant will repeat himself in some antisocial manner upon

his release despite reasonable controls and requirements made by his conditions of parole.

The author of the presentence report further noted that rehabilitation had been attempted in the past and had not been successful.[10] He opined, "The subject has been more dehabilitated then rehabilitated while institutionalized." In the view of the probation-parole officer, isolation of Price was the most important element to consider "in order to prevent future conduct . . . so that society may be properly protected." Thus, the presentence report concluded with the recommendation that Price be sentenced to a period of 20 years incarceration for the three felonies in question.

At the sentencing hearing the prosecution recommended consecutive sentences of 10 years on each conviction for a total of 30 years incarceration, placing primary emphasis on the belief that Price was not amenable to rehabilitation. In articulating the reasons for imposition of these consecutive 10-year sentences, the superior court stated that it was compelled to give primacy to the consideration of the need to protect the public. In elaborating on this theme, the sentencing court stated:

> Four cases of receiving and concealing, two cases of burglary, a forgery case, assault and battery—certainly this isn't a situation where I'm . . . concerned about the public's safety from violence or physical harm, but I'm certainly considering—am taking into account the fact that they have a right also to be secure in their possessions, which is a right that you [Price] have not, in my opinion, af-

---

Allegedly involved in offenses in Idaho and Wyoming, but no extradition proceedings taken.

9. In connection with his conviction, the presentence report states:

> While working as a bartender he became jealous over conversations of wife-to-be and customer, she received two swollen blackened eyes, swollen cheek, mouth and chin; with cuts inside her mouth.

10. This section of the presentence report reads:

This officer, in considering that the defendant appears to be far beyond rehabilitative considerations feels that he should be isolated for the protection of society; respectfully recommends that the defendant be committed to the department of Health and Social Services or its authorized representative in the Division of Corrections for a combined period of twenty years for the several crimes of attempting to procure females for prostitution and for the several crimes of burglary. This officer is unable to suggest parole consideration at any time in the near future.

forded to the people of this community or the communities you lived in.[11]

Additionally, we think it of significance that the superior court took a rather dim view of Price's chances of rehabilitation.[12]

■ In this appeal Price points out that the superior court imposed the maximum possible sentence authorized by AS 11.20.-080 [13] for the crime of burglary in a dwelling, and that the sentence imposed for the crime of attempting to procure a female for prostitution,[14] "in many ways . . . also represented a maximum sentence." Price argues that the superior court's imposition of consecutive maximum sentences for the three felonies involved was impermissible absent a characterization of Mr. Price as the worse offender in his class.[15] The state counters, arguing:

> Although the Court did not use the words 'worst offender,' Galaktionoff v. State, 486 P.2d 919, 924 (Alaska 1971), requires only 'some foundation for characterizing a defendant as the worst type of offender.' The magic words were not said in the case at bar, but the foundation for that conclusion was clearly stated by the court at sentencing.

Our review of the record in the case at bar has led us to the conclusion that the superior court's imposition of consecutive 10-year sentences for the burglaries was not excessive. In light of the sentencing objectives articulated by this court in State ·v. Chaney, 477 P.2d 441 (Alaska 1970), and its progeny, we hold that the superior court was not clearly mistaken in imposing two consecutive 10-year sentences for the burglaries. Inherent in our holding is the belief that Price's prior criminal record provided ample justification for imposition of consecutive maximum sentences for the·two burglary in a dwelling convictions. For Price's prior criminal record furnishes sufficient foundation for characterization of Price as the worst type of offender within the class designated by the legislature.[16]

■ Our difficulty with the superior court's sentence centers on the imposition of a consecutive 10-year term of imprisonment for the offense of attempting to procure a female for prostitution. Given the circumstances of this particular offense, we are of the opinion that the superior court was clearly mistaken in imposing a consecutive sentence of 10 years imprisonment. Here the record shows a peripheral type of attempt which only involved solicitation and nothing more. Given the severity of

11. The record also indicates that the superior court made the following observations during the sentencing proceedings:

> I'm not concerned with whether the D.A. elects to take you and to prosecute you for an habitual criminal or not. That's the district attorney's problem; not mine. But whether he does or not, this record is pretty clear that your existence outside of an institutional placement has been pretty clear that your existence outside of an institutional placement has been pretty unsuccessful. Except as pointed out in the report . . . this two-year period of time prior to the commission of the crimes for which you stand before the court now, seems to be the longest period of time that you've gone without problems since you attained your majority.

12. More particularly, the superior court stated, "But considering your past record and the evidence I have before me, which—it pretty well demonstrates the rehabilitation of the offender is not the paramount consideration in this case."

13. The text of AS 11.20.080 is set out at note 2, supra.

14. See note 1, supra, for the text of AS 11.40.-350.

15. In support of this argument Price cites Galaktionoff v. State, 486 P.2d 919, 924 (Alaska 1971), and Waters v. State, 483 P.2d 199, 201 (Alaska 1971).

16. Admittedly, the cumulative term of imprisonment for 20 years is very lengthy for crimes not involving physical danger to other persons. On the other hand, the record clearly portrays an individual who had acquired a criminal record of five felony convictions during the 7-year period from 1959 through 1966. Thus, the superior court was presented with the factual circumstances that the accused had committed eight serious felonies at the time the sentences in question were imposed. Given Price's recidivous behaviour, we cannot fault the superior court for concluding that the need for protection of society was to be accorded primacy in fashioning appropriate sanctions. It is clear that Price had consistently failed to abide by society's norms, and had demonstrated that he could not live unrestrained in a free society. Less restrictive sentences for Price's past felo-

the consecutive 10-year term, we have concluded that the matter should be remanded for resentencing as to this particular offense.

Thus, we conclude that the sentences imposed by the superior court for the crimes of burglary are not excessive and are Affirmed. The sentence of 10 years for the crime of attempting to procure a female for prostitution is held excessive in the circum-stances of this case, and is therefore vacated and the matter remanded for further sentencing proceedings.

ny convictions had been frequently applied with relatively little success in terms of protecting the public or guiding Price to conform his conduct to society's laws.