**Mark Spencer SMOTHERS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3657.**

Supreme Court of Alaska.

June 9, 1978.

Joseph A. Kalamarides, Settles, Kalamarides & Van Abel, Anchorage, for appellant.

James V. Gould, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

1. AS 11.20.080 provides:

*Burglary in dwelling house.* A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

This is a sentence appeal. Mark Spencer Smothers was convicted after trial of burglary in a dwelling, in violation of AS 11.-20.080,[1] and was sentenced to twelve years in prison. Smothers contends that his sentence is excessive and specifically alleges that the superior court erred in rejecting a "viable alternative" to incarceration: commitment to a therapeutic community. We affirm the sentence.

Smothers and two companions, Samuel A. Hague and John Heckart, were charged with breaking and entering an occupied residence on February 11, 1977 with the intent to commit larceny therein.

They tied up the three female occupants of the residence and proceeded to ransack the house. Hague[2] struck two of the occupants with a gun. The burglars were at the residence for approximately two hours during which time one of the occupants untied her hands and called the State Troopers.

Smothers, who was twenty years old and on probation at the time of the present offense, has an extensive prior record. His pre-sentence report discloses the following:

2. Hague testified against Heckart and Smothers and received a sentence of five years with four years suspended. Heckart, who had "practically" no prior record, was sentenced to seven years with five years suspended. We do not have before us an appeal with reference to the sentences of Hague and Heckart. Heckart's sentence was apparently based on his lack of a prior significant record. Since it is not before us, it is inappropriate for us to comment on the leniency of the sentence imposed on Hague, who evidently planned the crime and was the one who struck the victims. We have thus evaluated Smothers' sentence on its own merits.

Juvenile:

| | |
|---|---|
| June, 1971 | Joyriding |
| August 31, 1971 | Burglary in a Dwelling |
| September, 1971 | Joyriding |
| September 27, 1972 | Illegal Possession of Dangerous Drugs |
| November 16, 1972 | Joyriding |
| July 13, 1973 | Burglary |
| October 30, 1973 | Probation Violation |

Traffic:

| | |
|---|---|
| June 30, 1972 | No License |
| September 20, 1973 | One-Way Violation |

Criminal:

| | |
|---|---|
| August 16, 1975 | Disorderly Conduct |
| October 31, 1975 | Attempted Burglary |

At his sentencing hearing, he argued that commitment to Future House, a therapeutic community in Anchorage, should be ordered in lieu of an institutional sentence. Robert Keith, a counselor at Future House, testified about past successes with clients in the program and his belief that Smothers would have the opportunity to "make it" through Future House.[3]

Dr. J. Ray Langdon, who conducted a psychiatric evaluation of Smothers, diagnosed an antisocial personality, characterized by a lack of interest in society or the requirements of law. He stated that Smothers is not amenable to treatment.

The probation officer's written report concluded by recommending that "defendant be given a significant period of time to serve on both offenses, probation revocation

3. Testimony was also presented by Brian P. Knoedler, a client of Future House, and by Sylvia Smothers, the mother of Mark Spencer Smothers. Probation Officer Loy Ray Bolt stated that Future House may be of "help" to Smothers, but he recommended that time be served as well.

4. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974); *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

5. *See Parks v. State*, 571 P.2d 1003, 1005 (Alaska 1977).

6. In *State v. Chaney*, 477 P.2d at 444, we enumerated the factors to be considered in sentencing as follows:

   [R]ehabilitation of the offender into a non-criminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penologi-

and present offense." In light of the foregoing and our independent review of the record, we cannot say that the superior court was clearly mistaken[4] in declining to order treatment in a therapeutic community in lieu of incarceration.[5] We believe that the superior court carefully considered the possibility of rehabilitation,[6] and we will not disturb its judgment.

■ We note that the trial court expressed some uncertainty as to the meaning of the fourth *Chaney* criterion, the reaffirmation of societal norms, questioning whether it actually was a disguise for retribution. The use of retribution as a goal of sentencing is inconsistent with the mandate of art. I, § 12 of the Alaska Constitution that "Penal administration shall be based on the principle of reformation and upon the need for protecting the public," and was not adopted as one of the four goals in *State v. Chaney*, 477 P.2d at 444.

The support of community expectations that existing norms will be enforced and delicts will be punished is separate from retribution. The judge's balancing of the factors of rehabilitation, isolation and deterrence must also include an awareness that in sentencing, he is reflecting community beliefs that certain norms are viable and will be upheld by the courts.[7]

   cal treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. (footnote omitted)

   Those goals were derived from "Appellate Review of Primary Sentencing Decisions: A Connecticut Case Study," 69 Yale L.J. 1453, 1455 (1960). The record discloses that the superior court considered all of these factors at length.

7. Certain conduct may not be tolerated by those who live in modern society. Acts of violence to persons and transgressions against property are prohibited by criminal laws. Even though in an individual case, rehabilitation of the wrongdoer would require no punishment other than his personal remorse and nothing would be required to deter him or others from like conduct, preserving societal norms may

Although a sentence of twelve years is a severe penalty,[8] we do not believe that the superior court was clearly mistaken in imposing this sentence.[9] Burglary in a dwelling is a serious offense for which the legislature has authorized severe penalties. Where the dwelling is occupied at the time of the burglary, imprisonment may total twenty years.[10]

■ In view of Smothers' record, we find adequate basis for the superior court's characterization of Smothers as among the class of worst offenders, and the particular offense must be considered as among the worst type of burglaries. The victims were tied, two were struck and they were placed in a situation that must have caused great fear. In *Price v. State*, 565 P.2d 858, 862 (Alaska 1977), we approved two consecutive ten-year sentences for two separate counts of burglary in an occupied dwelling. Price was thirty-three years old and had an extensive record, but the burglaries for which Price was convicted did not involve elements of fear and violence like that of Smothers.[11] In light of his prior record and the fact that the present offense occurred while he was on probation, we do not find a sentence of twelve years to be served concurrently with the three and a half years imposed for revocation of probation to be excessive.

AFFIRMED.

necessitate an appropriate sentence. *See generally*, Bayley, "Good Intentions Gone Awry—A Proposal for Fundamental Change in Criminal Sentencing," 51 Wash.L.Rev. 529 (1976).

8. We have stated that, except for cases involving "particularly serious offenses, dangerous offenders and professional criminals," maximum prison terms ought not to exceed five years. *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974). *See also, Galaktionoff v. State*, 486 P.2d 919, 924 (Alaska 1971). The American Bar Association Standards Relating to Sentencing Alternatives and Procedures, Standard 2.1 states in part:

> Except for a very few particularly serious offenses, and except under the circumstances set forth in section 2.5(b) (special term for

certain types of offenders), the maximum authorized prison term ought to be five years and only rarely ten.

In considering Smothers' age, we would be inclined to disapprove any sentence in excess of ten years for the offense were it not for the fact that the sentence was imposed to run concurrently with the three and a half year revocation of probation.

9. *See* Note 4, *supra.*

10. *See* Note 1, *supra.*

11. We disapproved of Price's third consecutive ten-year sentence for attempting to procure a female for prostitution. *Price v. State*, 565 P.2d at 862.