THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES L. DeSANTIS, Appellant.

Fourth Department, November 4, 1977

*William B. Mahoney* for appellant.

*Edward C. Cosgrove, District Attorney (John DeFranks* of counsel), for respondent.

DILLON, J. Defendant and one Joseph Sarcinelli purchased airline tickets in San Diego, California, for a United Airlines flight to Buffalo by way of Chicago, and checked two suitcases through to their destination. They paid for the tickets with one hundred dollar bills which, according to the ticket agent, were removed from a "group" of others of the same denomination. This fact, coupled with the apparent nervousness of the two men, aroused the suspicion of the ticket agent and, in keeping with his "responsibility to the company", he opened the two suitcases and in one he observed two plastic bags containing what appeared to be marijuana.

He communicated this information to a drug enforcement agent in San Diego and furnished him with the men's names and descriptions, together with descriptions of their luggage, their flight number and destination, and the baggage claim ticket number for the suspected suitcase.

That information, in turn, was forwarded to drug enforcement officers in Buffalo who observed the defendant and

Sarcinelli arrive at the Buffalo Airport. Agent Johnson followed them to the baggage claim area where he observed the defendant pick up the suitcase bearing the baggage claim ticket number which Johnson had been furnished. Addressing the defendant, Johnson said "Excuse me, I believe you have my suitcase." When the defendant showed Johnson a claim check which had the matching number of the ticket on the suitcase, Johnson apologized and the defendant walked away, carrying the suitcase. Johnson then gave a prearranged signal to other officers stationed at the airport, and Deputy Sheriff Petronella placed the defendant under arrest and took possession of the suitcase.

Both the defendant and the suitcase were immediately taken to a police substation located within the airport where the suitcase was opened by Deputy Petronella. It contained two large plastic bags of marijuana and a brown bag containing smaller bags of white amphetamine pills.

The defendant's motion to suppress the evidence was denied and upon a jury trial he was convicted of criminal possession of a controlled substance in the second degree (Penal Law, § 220.18, subd 3) and criminal possession of a controlled substance in the fifth degree (Penal Law, § 220.09, subd 10).

The defendant contends on appeal that the facts upon which the airline ticket agent based his suspicion were insufficient to constitute probable cause for inspection of the content of defendant's suitcase. It follows, the defendant says, that the information communicated to the Federal narcotics officers was the product of an unlawful search requiring the suppression of the marijuana and amphetamines as evidence. Relying on *Jones v United States* (357 US 493), *Agnello v United States* (269 US 20), *People v Brown* (24 NY2d 421) and *People v Corrado* (22 NY2d 308), he argues that the ticket agent's observations fell short of raising "the level of inference from suspicion to probable cause" *(People v Corrado, supra,* p 313).

Those cases are inapposite, however, in that they all involved searches made by or at the behest of the police. We would agree, of course, that suppression would be required here if the ticket agent's search of the suitcase could be characterized as State action within the contemplation of the Fourth Amendment.

It is well settled that the constitutional prohibition against unlawful searches does not apply to purely private activity *(Burdeau v McDowell,* 256 US 465; *People v Horman,* 22

NY2d 378; *Sackler v Sackler,* 15 NY2d 40; *People v Defore,* 242 NY 13). "[E]xclusion of evidence [is not required] because a private individual has gathered it by unlawful means" *(People v Horman, supra,* p 381). Evidence so gathered, however, is subject to the exclusionary rule if the ostensible private activity is so imbued with governmental involvement that the actor is in essence an agent of the government *(People v Esposito,* 37 NY2d 156; *Corngold v United States,* 367 F2d 1).

Where the search into personal property is made by an employee of a common carrier in pursuit of the private interests of the employer and in furtherance of the common carrier's common-law right to inspect goods presented for shipment, it is not constitutionally proscribed *(United States v Pryba,* 502 F2d 391, cert den 419 US 1127; *United States v Ford,* 525 F2d 1308; but see *United States v Fannon,* 556 F2d 961). On the other hand, when the motivation for the search is provided by the government, an intrusion into such property may not be made other than in conformity with the Fourth Amendment *(United States v Newton,* 510 F2d 1149; *United States v Pryba, supra).* Put another way, the inquiry concerns whether the inspection was made for private purposes or made in concert with the police in furtherance of a criminal investigation.

There is no indication in this record that the airline ticket agent inspected defendant's suitcase at the behest of the police or otherwise in concert with them. He was in no way governmentally motivated. Indeed, upon observing what he believed was contraband, he notified a law enforcement agent, but only after the intrusion was complete. Once the ticket agent's observations were conveyed by the California agent to government agents in this State (see *People v Lypka,* 36 NY2d 210, 213), and other relevant details were verified, as they were here, the police were possessed of "layers of information" constituting probable cause for both the arrest of the defendant and the seizure of the suitcase at the Buffalo Airport *(People v Tolentino,* 40 AD2d 596; see *People v Reisman,* 29 NY2d 278; *People v Coffey,* 12 NY2d 443).

Accepting then the propriety of both the defendant's arrest and the seizure of the suitcase, the more troublesome question arises as to whether the search of the suitcase without a warrant may be justified as incident to the arrest.

"The rule allowing contemporaneous searches is justified

\* \* \* by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." *(Preston v United States,* 376 US 364, 367.) The area of the accused's immediate control has been construed to mean "the area from within which he might gain possession of a weapon or destructible evidence" *(Chimel v California,* 395 US 752, 763).

*Chimel* has been interpreted to justify as incident to the arrest a search of an attaché case taken by the police from the hand of the accused at the moment of his arrest *(People v Darden,* 34 NY2d 177, 180). In *Darden,* as here, there was probable cause to arrest the defendant and seize the attaché case. Other facts in *Darden* are strikingly similar to those in the case at bar. The police arrested the defendant at the Rochester Airport following his arrival on a flight from New York City. The police immediately took possession of the attaché case which defendant had been carrying in his hand. He was escorted to an airline office across a hallway where the police conducted simultaneous searches of the defendant's person and of the attaché case. A substantial quantity of heroin was recovered from the attaché case.

Not to have seized the attaché case in such circumstances "would have been both to expose the arresting officers to the risk of serious injury by means of weapons which might have been concealed in the case, as well as to risk destruction of the incriminating evidence which the case might have contained." *(People v Darden, supra,* p 180.) Drawing no distinction between the seizure of the attaché case and its warrantless search after it was in the exclusive possession of the police, the *Darden* court concluded that the search "was a proper incident to defendant's arrest" *(id.,* p 180).

The justification for a search contemporaneous to an arrest has also been expressed in different terms by Chief Judge BREITEL in *People v Perel* (34 NY2d 462, 467):

"The reason searches of a person and his immediate effects at a place of detention are permissible lies not in the fiction that they are incident to arrest but because of the maximum intrusion already effected by an arrest and detention". \* \* \*

"Given the nature of the gross intrusion by detention of the

person it is reasonable to conduct a less intrusive search of his person and the possessions he carried with him."

Both in *Perel* and in *People v Weintraub* (35 NY2d 351), it was recognized that impoundment of property being carried by the accused at the moment of his arrest is a lesser intrusion than searching it without a warrant, but each reaffirmed, citing abundant authority, that there is no constitutional restriction upon the traditional right contemporaneously to search the property incident to a valid custodial arrest (see *People v Weintraub, supra,* p 354; *People v Perel, supra,* p 467).

We are thus led to a determination of whether the Supreme Court, in *United States v Chadwick* (433 US 1), has now formulated such a constitutional restriction.

In *Chadwick,* the court was concerned with a double-locked footlocker which had been loaded by two of the defendants onto a train in San Diego for transport to Boston. They claimed the footlocker at the Boston terminal and were there joined by Chadwick. The footlocker was then placed into the trunk of a waiting car, but while the trunk door was still open and before the car engine had been started, Federal agents arrested all three and seized exclusive possession and control of the footlocker. The three were taken to the Federal building in Boston, as was the footlocker, which was separately transported by Federal agents with Chadwick's car. An hour and a half later, without a warrant and without defendants' consent, but acting with probable cause to believe that the footlocker contained a controlled substance, the agents opened the footlocker and found it to contain large amounts of marijuana.

In holding that the defendants were entitled to the protection of the warrant clause before their privacy interests in the contents of the footlocker were invaded, the court pointedly distinguished impoundment (seizure) of luggage or other property from the right of the police to intrude into the property.

Upon its determination that "a line must be drawn", the court defined a standard for distinction between the two events. "In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority" *(United States v Chadwick,* 433 US 1, 15, *supra).*

*Chadwick,* however, is not authority for vitiating the search

in the case at bar. Indeed, it is authority for upholding it. The Government there agreed "that the footlocker was not within [defendants'] immediate control" when it was seized *(United States v Chadwick, supra,* p 14) and the court found, therefore, that there was no exigency which would justify the search.

"Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *(United States v Chadwick, supra,* p 15, emphasis added.)

Here, however, we are concerned with the seizure of a suitcase which was, at the moment of arrest, "immediately associated with the person of the arrestee". In such circumstances, as restated in *Chadwick,* it was reasonable for the arresting officers to conduct a prompt warrantless search of the defendant "and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence" *(Chimel v California,* 395 US 752, 763, *supra).* Thus, as applied here, *Chadwick* does not change the law with respect to a search incident to a lawful custodial arrest but, rather, reinforces what long has been the law *(United States v Edwards,* 415 US 800; *United States v Robinson,* 414 US 218; *Chimel v California, supra; People v Weintraub,* 35 NY2d 351, *supra; People v Perel,* 34 NY2d 462, *supra; People v Darden,* 34 NY2d 177, *supra).*

Given the greater intrusion of the defendant's lawful arrest upon probable cause, the police required no additional justification for the incidental search of the suitcase *(People v Weintraub, supra,* p 354) provided, of course, the search was not remote in time or place from the arrest *(United States v Chadwick,* 433 US 1, 15, *supra; Preston v United States,* 376 US 364, 367, *supra).* It cannot be said, in the circumstances presented, that it was unreasonable for the police to seize the suitcase from the defendant's hand, and then to remove him and the suitcase from the public area of the airport to a police office located within that facility, there to conduct the search (see *People v Darden, supra).*

In the view thus taken, it is unnecessary to decide the other issue raised by defendant on appeal.

The judgment of conviction should be affirmed.

CARDAMONE, J. P., SIMONS, HANCOCK and DENMAN, JJ., concur.

Judgment unanimously affirmed.