Meyer, J.
(dissenting in part). Respectfully I dissent from so much of the Appellate Division’s order as modified Criminal Term’s suppression of the contents of the package. The majority concedes, and I agree, that considered separately from the Los Angeles seizure, the action of the New York police constituted an unlawful search. I agree also that a search by a private person is not within the constraints of the Fourth Amendment, so long as that person acts in his own interest and not as an agent or in the interest of the government, and that the fact that an airline tariff provision permits an airline employee to open a package shipped air freight is not, by itself, sufficient to constitute government involvement in the opening of a package by an airline employee (see, generally, Ringel, Searches and Seizures, Arrests and Confessions [2d ed], §§ 2.3, 16.2; Admissibility, in Criminal Case, of Evidence Obtained By Search By Private Individual, Ann., 36 ALR3d [supp, § 6.5]). Moreover, I concede that there is nothing evil per se in co-operation between an airline aware that it has possession of contraband and the police of the area in which the discovery is made or between law enforcement personnel (State or Federal) of that area and their counterparts in the area of destination. Contraband validly seized at the point of shipment does not lose its police custody status because it is returned to the airline for transportation or until such time as it leaves police-airline custody (as, for example, by delivery to the recipient, United States v Edwards, 602 F2d 458). Absent such a break in custody, therefore, arrest of the recipient at the point of destination when he seeks to take possession of the package, suitcase, footlocker or similar container in which the contraband was shipped will generally be proper and "seizure” of the contraband at that point, because it is but the continuation of the earlier valid seizure, need not be otherwise justified.
Having said all of that I nevertheless cannot accept the conclusion of the majority that the evidence here presented demonstrates the validity of the Los Angeles search or permits the inferences (necessary to the result it reaches) that the majority draws. I am troubled also, apart from the insufficiency of the evidence, by its evident unreliability.
Warrantless searches or seizures are, as we held in People v Hodge (44 NY2d 553, 557), presumptively unreasonable per se *741 and it is the People who have the burden of overcoming that presumption (id.; Coolidge v New Hampshire, 403 US 443, 455; People v Wise, 46 NY2d 321, 329; cf. People v Di Stefano, 38 NY2d 640, 652).[1] It was, therefore, the People’s burden to show that the Los Angeles handling of the parcel, upon which the majority relies, was proper (see United States v Ford, 525 F2d 1308, 1313). The majority’s holding that the warrantless Los Angeles seizure was constitutionally proper rests upon its legal conclusion that there was "no governmental seizure in the constitutional sense” in the handling of the package by the Los Angeles police after receipt of it from airlines agent Orr (p 737), and its inferences that "the private search revealed the presence of contraband” (p 737) and that the airlines agent’s action was not taken in furtherance of some governmental objective (p 737). The legal conclusion is irrelevant because it is the propriety of the search not whether there was a seizure that governs. Nor are the majority’s factual inferences warranted.
The legal conclusion must be viewed in light of the Supreme Court’s June 20, 1980 decision in Walter v United States (447 US —, 48 USLW 4807). There a package of obscene film was misdelivered by the carrier to a company with a name similar to that of the consignee. Having opened the cartons and believing from the labels and suggestive drawings on the individual boxes of film contained in them that they contained obscene film, but being unable because of the size of the film to determine the actual content of the film without a projector, the recipient called an FBI agent, who picked them up and, thereafter, without obtaining a warrant, viewed the films with a projector.
Defendant’s motion to suppress was denied and the Fifth Circuit Court of Appeals by a divided court affirmed. The Supreme Court reversed, the majority concluding that there was in the FBI’s viewing of the film "an unreasonable invasion of their owner’s constitutionally protected interest in privacy” (447 US —, —, —, 48 USLW 4807, 4808, 4811, supra). The court split 5 to 4, with Mr. Justice Marshall concurring in the judgment without stating his reason for so doing, Justices Stevens and Stewart joining in an opinion holding that, assuming there was no seizure there was nevertheless an *742 improper search, and Justices White and Brennan taking the view that even if the recipient had projected the films before turning them over to the Government, the Government still would have been required to obtain a warrant for its subsequent screening of them. The Stevens opinion pointed out that an officer’s authority to possess a package is distinct from his authority to examine its contents, that the Government may not exceed the scope of the private search unless it has the right to make an independent search, and that the opening of the cartons by a third party "does not alter the consignor’s legitimate expectation of privacy. The private search merely frustrated that expectation in part. It did not simply strip the remaining unfrustrated portion of that expectation of all Fourth Amendment protection.” It concluded that "[sjince the additional search conducted by the FBI — the screening of the films — was not supported by any justification, it violated that Amendment” (447 US, at p —, 48 USLW, at p 4810).[2] The White opinion agreed that the warrantless projection of the films constituted a search despite the fact that the Government had acquired the films from a private party, stating flatly that "The notion that private searches insulate from Fourth Amendment scrutiny subsequent governmental searches of the same or lesser scope is inconsistent with traditional Fourth Amendment principles” (id.).
While there were prior to the Walter decision cases holding it immaterial whether a package was open or closed when the private searcher turned it over to the police officer (People v McKinnon, 7 Cal 3d 899, 915-916; United States v Pryba, 502 F2d 391, 401; United States v Blanton, 479 F2d 327, 328-329), the authority of those cases is now seriously in question.[3] *743 Moreover, there were as many if not more cases holding or implying that the circumstances attending the officer’s possession of the property bear materially on the constitutionality of his search of it, including several on which the majority rely. Thus, McConnell v State (595 P2d 147 [Alaska], cert den sub nom. McConnell v Alaska, 444 US 918) held no more than that "law enforcement officials must come into lawful possession of the contraband. Seizure of contraband after it is observed in plain view is one method of acquiring lawful possession” (595 P2d, at p 154; emphasis supplied).* **[4] The decision in State v Pohle (166 NJ Super 504, cert den 81 NJ 328) may be read as indicating that the contents were removed from the package before both were turned over to the police (see NJ Super, at pp 507, 513) and possibly that the airline employee was able to identify (cf. 166 NJ Super, at p 513) the contraband (described simply as "about 500 tablets, and a bundle of bills totaling $5,000”, see 166 NJ Super, at p 507) before turning it over to the police. In United States v Ford (525 F2d 1308, 1312, supra) the court noted that it was "the duty of the officers to further investigate the open box * * * to determine whether the suspicious substance in plain view was in fact contraband.” Thus, whether viewed in light of the Walter holding or the prior case law on which the majority rely, the warrantless search by the Los Angeles police was improper, unless airlines agent Orr in fact identified what the pills were, or there was an exigency justifying search without a warrant.
There is nothing to show that Orr had any basis for concluding that the pills he found were not wholly innocuous. The majority’s finding that "the private search revealed the presence of contraband” is a quantum leap from the evidence presented by New York Police Officer McCarthy, the only witness presented. He testified that he identified the pills as amphetamines and barbituates from the markings of the capsules and his knowledge of the Physician’s Desk Reference *744 concerning the meaning of those markings, but as to the Los Angeles events he could only testify that Los Angeles Detective Lott told him that airline employee Orr "suspected narcotics” when he opened the package and found pills. What an airline employee observes cannot be equated with the observations of a police detective who has become an expert through long work in the narcotics field. To say that the airline employee’s observations "revealed the presence of contraband” is, therefore, to allow a warrantless seizure on nothing more than the airline employee’s suspicion (see United States v Haes, 551 F2d 767, 771; cf. United States v Rodriguez, 596 F2d 169, 174; but see People v De Santis, 46 NY2d 82, 86). Yet if one thing is clear in Fourth Amendment law it is that the major purpose of the amendment was to forestall search or seizure based solely on rumor or suspicion.
Nor can Los Angeles Officer Lott’s search be justified on the theory of exigent circumstances. The People argue that the package had been turned over to the airline for shipment on a particular flight. There is, however, nothing in the record to establish that the shipper instructed or requested that a particular flight be used. The Los Angeles police report in evidence shows only that at 9:20 a.m. a man "brought a pkg. to the United Airline ticket counter to be sent to Little Neck, N.Y.” and that it was, in fact, "sent on United flight #8 to JFK Airport LAX (1200 hours), arrival at JFK (2015 hours).” The People also contend, based on United States v Ford (525 F2d 1308, supra), that exigency can be found in the possibility that failure to ship the contraband promptly may have alerted the New York consignee (defendant) and thus frustrated the investigation and arrest process. The contention overlooks the airline tariff provision (referred to in People v McGrew, 1 Cal 3d 404, 410, cert den 398 US 909; and People v McKinnon, 7 Cal 3d 899, 906, cert den 411 US 931, supra) permitting shipment on a "space available” basis, a possibility which it is essential for the People to negate in the first instance if the presumption against validity of a warrantless seizure is to retain any meaning.
The majority disposes of any agency issue by stating (p 737) that the airline employee’s action was "taken not in furtherance of some objective of the government but on behalf of the airline”. While there is nothing in the record to show that United Airlines employee Orr had been previously known to Los Angeles Police Investigator Lott, there also is nothing *745 to show that he had not acted in many prior instances in the same capacity or that he was not acting in this particular instance at Lott’s request. To overcome the presumption the People had to show not only that Orr could have (or even did) have an airline motive for opening the package, but also that he was not acting at the instigation or behest of the Los Angeles police, whether as to the instant case or as a matter of general arrangement between them.[5] The issue is, however, nowhere touched upon in the exhibits or in the direct testimony. The only reference to agency was defendant’s attorney’s rather poignant question on cross-examination to McCarthy: "Did anyone inquire as to whether or not Mr. Orr had been requested by the law enforcement agencies in Los Angeles to look for such packages or to disclose to them that he had suspicious packages?” To that question McCarthy responded only "I don’t know.”
That response vividly illustrates the all but impossible burden on the defendant when the presumption of invalidity of a warrantless search is permitted to be overcome by evidence of the type here offered. Defendant’s memorandum after the suppression hearing protested the type of information supplied to the New York police by the Los Angeles police. Notwithstanding the fact that CPL 710.60 (subd 4) makes hearsay "admissible to establish any material fact” in a suppression hearing, we have had occasion to comment on the necessity of the People producing a particular officer as a witness because of the danger of relying upon a "tenuously balanced * * * pyramid of hearsay” (People v Havelka, 45 NY2d 636, 641). Here, as noted, the sole witness at the suppression hearing was New York Police Officer McCarthy. He testified that the Queens Narcotics area office received a telephone message from Drug Enforcement Agency Officer Perori at Kennedy Airport that Investigator Lott of the Los *746 Angeles police had alerted Perori to the parcel and that another officer of Queens Narcotics, probably Detective Rabacki, then telephoned Lott, who told that officer what airline employee Orr had said and done. Thus, McCarthy’s testimony about Orr’s acts is at least fourth-hand hearsay. Had Orr or Lott been produced as suppression hearing witnesses, the gaps in the evidence would not have existed.
Whether, notwithstanding the admissibility of hearsay at suppression hearings, fourth-hand hearsay is so unreliable that its use presents a due process problem it is not necessary now to decide. Clearly, the People have not come forward with proof sufficient to overcome the presumption. When to that fact is added the essential unreliability of the evidence they have produced, I have no hesitancy in applying the exclusionary rule to suppress the contraband.
For the foregoing reasons, I would hold both the New York seizure and the Los Angeles search in violation of defendant’s constitutional rights and would, therefore, modify the order of the Appellate Division and reinstate the order suppressing the contents of the package (People v Havelka, 45 NY2d 636, 643-644, supra).
Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur with Chief Judge Cooke; Judge Jones concurs in a separate opinion; Judge Meyer dissents in part and votes to modify in an opinion.
Order affirmed.

. The majority’s footnote 3 turns the presumption referred to in the cited cases on its head.

. The majority distinguishes the Walter case (at pp 737-738), claiming that it involved, First Amendment considerations and that in the present case the police did not go beyond the private search. But the First Amendment was mentioned only to emphasize the importance of scrupulous observation of the general Fourth Amendment principle that "an officer’s authority to possess a package is distinct from his authority to examine its contents” (447 US, at p —, 48 USLW, at p 4809). The second distinction is no clearer. It is difficult to see a factual distinction between the screening of film as to the contents of which the private party suspected obscenity because of the labels and drawings and such visual inspection of the film as he could make and the chemical analysis by the police of pills which the private party suspected were narcotics. If the screening was an intrusion on privacy interest so was the analysis of defendant’s pills.

. In any event they can be distinguished on their facts: McKinnon, because the officer could see the shape of the marihuana brick and smell its odor (7 Cal 3d, at p 917); Pryba, because the record showed the box remained open (502 F2d, at p 401, n *743 66); Blanton, because the decision recites, though it attaches no apparent significance to the fact that, defendant arrived before the Federal officer, called his lawyer after being told the bag was being held for arrival of the Federal officer and was told to cooperate (479 F2d, at p 328).

. The majority does not rely on a plain view theory, but since United States v De Berry (487 F2d 448), on which it does rely, does (id., at p 451), I note that "plain view alone is never enough to justify the warrantless seizure of evidence” (Coolidge v New Hampshire, 403 US 443, 468, supra [emphasis in original]; People v Jackson, 41 NY2d 146, 150; cf. Walter v United States, 447 US —, —, 48 USLW 4807, 4809, supra).

. That the airline employee at the point of shipment is often dangerously close to acting as a government agent is suggested by McConnell v State (595 P2d 147, affd sub nom. McConnell v Alaska, 444 US 918, supra) and Snyder v State (585 P2d 229 [both Alaska]) and People v McKinnon (7 Cal 3d 899, cert den 411 US 931, supra, the first two of which involved an airline employee who in two years uncovered drugs in 30 air shipments and testified that he opened 90 to 100 parcels per month, and the third of which concerned an employee who on four or five occasions in three years had opened packages and found marihuana and followed the practice of leaving the parcel open "so that when the police arrive 'there is no cause for illegal search or seizure.’ ” (7 Cal 3d, at p 904.) That in all three cases the finding on the particular facts was of nonagency does not mean that agency can never be spelled out as a matter of fact (cf. 1 La Fave, Search and Seizure, § 1.6).